# EXHIBIT 'A'

# REVOLVING INVENTORY CREDIT LINE AND UNSECURED LOAN AGREEMENT

THIS REVOLVING INVENTORY CREDIT LINE AND UNSECURED LOAN AGREEMENT dated as of April 20, 2026 (this "Agreement"), between the investors listed on Exhibit A attached hereto and made a part hereof (each, an "Investor" and collectively, the "Investors") and Topical BioMedics, Inc., as Topricin® brand owner ("TBM"). The Investors and TBM each being a "Party" to this Agreement and collectively being the "Parties" to this Agreement.

**WITNESSETH:**

**WHEREAS**, TBM owns and sells Topricin® brand of natural, homeopathic pain relief and skin care creams (collectively, "TBM Inventory");

**WHEREAS**, TBM has used third party manufacturers to assemble, blend, process, package, and finish all TBM Inventory, for TBM to sell to its customers, throughout TBM's 32 year history;

**WHEREAS**, on November 11, 2024, TBM filed for reorganization under Chapter 11 of the U.S. bankruptcy code and filed an adversary proceeding against certain adverse parties (the "Adverse Parties") in the United States Bankruptcy Court, S.D.N.Y., Poughkeepsie Courthouse (the "Court");

**WHEREAS**, the Court granted TBM's application for a temporary restraining order against the Adverse Parties (the "Court's TRO"), enjoining them from interfering with TBM's business relationships including its two domestic U.S. manufacturers;

**WHEREAS**, despite the Court's TRO and the Court's subsequent determination that the Adverse Parties violated the Court's TRO, TBM was unable to continue its relationship with the two prior manufacturers, so TBM sought to develop new domestic U.S. manufacturing relationships;

**WHEREAS**, TBM has now found and onboarded a new U.S. domestic manufacturer ("Current Mfg. Co."), which currently produces Topricin® products that TBM currently sells;

**WHEREAS**, TBM is currently onboarding a second new U.S. domestic manufacturer ("Second Mfg. Co.")(Current Mfg. Co., Second Mfg. Co., and any additional manufacturers found, onboarded, and producing TBM Inventory being the "New Manufacturers");

**WHEREAS**, in order to procure and pay for the ingredients and components for manufacture (collectively, "Component Procurement"), New Manufacturers generally require that TBM deposit approximately fifty percent (50%) of the contract manufacturing price and/or that TBM complete Component Procurement itself (either/both being "Inventory Component Cost");

**WHEREAS**, both New Manufacturers require the balance due, i.e., 50% balance of contract manufacturing price, paid on completion of manufacture, when the completed Topricin® inventory is ready to be shipped to TBM's warehouse in West Hurley, N.Y. ("Inventory Manufacture Cost");

**WHEREAS**, TBM has substantial, ongoing, and scalable demand for Topricin® inventory from TBM's direct consumers and professionals, direct online sales platforms including Amazon Seller, wholesalers, distributors, and in-store retailers (collectively, "TBM Customers");

**WHEREAS**, there is a gap ("Inventory Financing Gap") between the timing of (A) TBM paying and funding Inventory Component Cost, Inventory Manufacture Cost, and shipping costs (collectively, "Inventory Funding Costs") and (B) TBM's receipt of sales proceeds from TBM Customers ("TBM Sales Receipts") to pay Inventory Funding Costs;

**WHEREAS**, TBM's restructuring plan explicitly focuses on higher margin TBM Sales Receipts, sufficient to pay (a) Inventory Funding Costs, (b) TBM's operations and obligations, and (c) new financing costs to bridge the Inventory Financing Gap ("Inventory Funding");

**WHEREAS**, the Investors are willing to provide Inventory Funding, to bridge the Inventory Financing Gap, in the form of a revolving credit line and unsecured loan agreement on the terms and conditions provided in this Agreement; and

**WHEREAS**, Inventory Funding and this Agreement requires the approval of the Court, and the Parties desire that this Agreement be used for such purposes.

**NOW THEREFORE**, in consideration of their mutual covenants and commitments, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged and agreed, the Parties hereto agree and shall be bound as follows:

1. **Recitals**. The WHEREAS recitals above shall be deemed part of this Agreement.

2. **Investors**. The Investors shall fund the loan (the "Loan"), in the principal amount as listed on Exhibit A for each Investor, into a designated escrow, trust, money market, or supervised account reasonably acceptable to the Investors ("Designated Bank Account"), for the Term of this Agreement (as hereinafter defined), to be used exclusively for the purposes as described below.

3. **Use of Escrow Limited to Inventory Funding and Transaction Fee**.

A. All amounts in the Designated Bank Account shall be used exclusively for payment of Inventory Funding and the transaction fee (as hereinafter defined, the "Transaction Fee").

B. Inventory Funding shall be paid directly from the Designated Bank Account to the New Manufacturers or for Component Procurement, as applicable, and the Transaction Fee shall paid directly from the Designated Bank Account to the Investors.

C. The Loan is unsecured, but it is a material condition of the Loan that it shall be used exclusively to fund the Inventory Financing Gap as described herein and that repayment shall be made out of TBM's sales of the inventory as funded.

D. Nothing herein shall prevent TBM from negotiating purchase order financing or to enter into similar inventory financing arrangements with additional investors, in order to fund additional inventory production and scaling, subject to court approvals as provided below (as and if required).

4. **Transaction Fee**.

A. The Transaction Fee shall be five percent percent (5%) of the amount borrowed by TBM.

B. By way of example, if an Investor deposits $100,000 into the Designated Bank Account for an annual period, and TBM borrows the full $100,000 for Inventory Funding, then the Investor shall be paid $5,000 as a Transaction Fee; if TBM then pays the $100,000 back into the Designated Bank Account and re-borrows the full $100,000, then another $5,000 shall be paid to the Investor as a Transaction Fee.

C. All Investors (to the extent there are multiple investors) shall receive their portion of the Transaction Fee of the amount borrowed by TBM pro rata. Transaction Fee shall be paid to each Investor in the manner designated on Exhibit A.

D. The intent of each Transaction Fee is to allow TBM to borrow committed funds from the Designated Bank Account by paying a Transaction Fee, then re-pay those committed funds (including the Transaction Fee) back to the Designated Bank Account, and then re-borrow the same committed funds from the Designated Bank Account by paying another Transaction Fee (then re-paying and re-borrowing and so forth with transaction fees each time), as a revolving facility. The intent of this structure is to allow TBM to scale inventory production, and therefore scale its revenues as inventory turnover increases, by allowing TBM to buy new inventory with the same funds that are continually borrowed and repaid.

5. **Loan Principal and Interest Payments**.

A. TBM shall use its reasonable best efforts to repay principal over a period of twelve (12) weeks or less after TBM Sales Receipts from sales of inventory as funded and manufactured. Notwithstanding any such efforts for repayments, the principal (including the Transaction Fee) shall be repaid by TBM to Investors in full over the Term of the Loan.

B. Principal borrowed (including the Transaction Fee) shall be repaid by TBM into the Designated Bank Account, and may be re-borrowed by TBM at any time during the Term provided it is used for Inventory Funding purposes at described above.

C. Interest shall be paid at the rate of Fifteen Percent (15%) per annum, from the time the Loan is funded into the Designated Bank Account, through the end of the Term.

D. Interest shall be paid in the payment method as listed on Exhibit A for each Investor.

E. TBM shall use its reasonable best efforts to pay interest to each Investor monthly, but shall in no event pay interest to each Interest less frequently than annually.

6. **Term; Revolving Nature of Loan**. The term of the loan (the "Term") shall be for two (2) years, such that all principal, interest, and transaction fees shall be repaid in full at the end of the Term. Based on the revolving nature of the Loan, funds invested by Investors may be reutilized by TBM throughout the Term but solely for the purposes described above. Nothing herein shall prevent Investors and TBM from agreeing to further extend the Term, provided any such extension is in writing.

7. **Miscellaneous Legal**. This Agreement shall be governed by the laws of the State of New York. Parties agree to jurisdiction in the State of New York, in any Court of applicable jurisdiction in the Hudson Valley of New York. Any waiver or failure to enforce this Agreement shall not be deemed a waiver of any right to enforce future breaches of this Agreement. If any part or portion of this Agreement is unenforceable, the remainder of the Agreement shall be enforced in such manner as to effectuate the intent of the whole of the Agreement. The Parties shall provide further assurances and enter into further documentation as reasonably required. In the event of a dispute under this Agreement, which results in the commencement of legal fees, the prevailing party in such proceeding shall be entitled to reimbursement of its legal fees and disbursements from the non-prevailing party. This Agreement contains the entire agreement among the Parties with respect to the subject matter of this Agreement, and supersedes each course of conduct previously pursued or acquiesced, and each oral agreement and representation previously made, by the Parties with respect thereto, whether or not relied or acted upon. This Agreement shall be deemed binding upon and inure to the benefit of all Members, and each of the successors and assignees (if permitted) of the Members. Each Party has taken all necessary or desirable actions for due authority with respect to its signatory to bind such Party in this Agreement.

8. **Counterparts; Digital Signatures**. This Agreement may be executed in counterparts, which when taken together shall constitute an original binding agreement among the Parties hereto. Digital, electronic, or facsimile signatures shall be deemed binding and effective.

9. **Court Approval**. This Agreement is expressly conditioned on approval of the U.S. Bankruptcy Court, Southern District of New York, Poughkeepsie Courthouse, Case No. 24-36109 (KYP), before Hon. Kyu Y. ("Mike") Paek, U.S. Bankruptcy Judge.

**IN WITNESS WHEREOF**, the Parties have duly executed and delivered this REVOLVING INVENTORY CREDIT LINE AND UNSECURED LOAN AGREEMENT as of the date first above written.

**TOPICAL BIOMEDICS, INC.**

**By:** Dennis Barnett
**Dennis Barnett, its Chairman/CEO**

**INVESTORS** John D. Stanton

**By:** John D. Stanton
**Name:** John D. Stanton

**By:** ______________________
**Name:**

**Exhibit A**
**Investors**

| Name: | Principal Amount Invested: | Payment Method/Address: |
|---|---|---|
| John Stanton | $100,000 | TBD |
| ______________ | ______________ | ______________________ |
| ______________ | ______________ | ______________________ |